**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

| | | |
|---|---|---|
| **TCF EQUIPMENT FINANCE,** | ) | |
| **a division of TCF NATIONAL BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. _____ |
| | ) | |
| **KMH SYSTEMS, INC.,** | ) | |
| **VALLEY PACKAGING CORP. and** | ) | |
| **AMUR EQUIPMENT FINANCE, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, TCF Equipment Finance, a division of TCF National Bank ("TCF"), by and through counsel, files this Complaint against the Defendants, KMH Systems, Inc. ("KMH"), Valley Packaging Corp. ("VPC") and Amur Equipment Finance, Inc. ("Amur") (collectively, "Defendants") as follows:

## THE PARTIES

1.      TCF Equipment Finance is a division of TCF National Bank, a national bank with its main office in Sioux Falls, South Dakota.

2.      KMH Systems, Inc. is a for-profit corporation incorporated under the laws of the State of Ohio and registered to conduct business in Tennessee. KMH's principal address is 6900 Poe Avenue, Dayton, Ohio 45414-2531. Its registered agent for service of process in Tennessee is KMH Systems, Inc., 181 Industrial Boulevard, La Vergne, Tennessee 37086-4180.

3.      Valley Packaging Corp. is a for-profit corporation incorporated under the laws of the State of Tennessee. VPC's principal address is 2431 Minor Hill Highway, Pulaski, Tennessee

38478-7930.  Its registered agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

4.     Amur Equipment Finance, Inc. is a for-profit corporation incorporated under the laws of the State of Nebraska and registered to conduct business in Tennessee.  Amur's principal address is 308 North Locust Street, Suite 100, Grand Island, Nebraska 68801-5985. Its registered agent for service of process in Tennessee is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

## JURISDICTION AND VENUE

5.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     For purposes of diversity jurisdiction, TCF is deemed to be a citizen of South Dakota;[1] KMH is deemed to be a citizen of Ohio; VPC is deemed to be a citizen of Tennessee; and Amur is deemed to be a citizen of Nebraska.

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and -(3).

## FACTUAL ALLEGATIONS

9.     On or around October 21, 2015, KMH and VPC entered into a rental agreement (the "Rental Agreement") having agreement number 930986 where KMH agreed to rent five (5) Nissan/Unicarrier 5000 pound LPG forklifts to VPC (the "VPC Equipment") in exchange for monthly payments of $3,000.00.  The Rental Agreement has a forty-eight (48) month term effective October 2015 and expiring September 2019. A copy of the Rental Agreement is attached hereto as Exhibit 1.

---

[1] For purposes of diversity jurisdiction, a national bank is located in the State designated in its articles of association as its main office.  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).

10.     KMH and VPC subsequently entered into a Transfer & Assumption Agreement Addendum on October 21, 2015 (the "Addendum"). The Addendum purports to modify the Rental Agreement to provide that: (a) VPC has only a minimum term of 12 months required at the rate agreed upon under the Rental Agreement, (b)VPC has the exclusive option "to invoke a directive to transfer the assumption of the balance of payment stream to another affiliated party" after KMH received the twelfth payment under the Rental Agreement, and (c) that VPC's invocation of that transfer option would require at least sixty (60) days written notice by VPC to KMH prior to such transfer.  A copy of the Addendum is attached hereto as Exhibit 2.

11.     The Addendum is unenforceable on its face because it is not signed by the creditor, KMH, and therefore is not in compliance with the Statute of Frauds, Tenn. Code Ann. § 29-2-101.

12.     In the alternative, to the extent this Court deems the Addendum to be enforceable, then the Addendum impaired the rights of TCF under the Rental Agreement.

13.     KMH and Axis Capital, Inc. ("Axis") entered into an assignment agreement on October 29, 2015 (the "Assignment") where KMH assigned to Axis (a) its rights to receive the monthly lease payments owed by VPC under the Rental Agreement, including its rights to recover for VPC's breach of the Rental Agreement, and (b) its rights to any damages or payments arising out of loss, damage, sale, destruction or other disposition of the VPC Equipment. A copy of the Assignment is attached hereto as Exhibit 3.

14.     The obligations of KMH under the Assignment are secured by a collateral assignment and grant of lien and security interest granted by KMH to Axis in (a) KMH's "entire right, title, interest and remedies in and to the [Rental Agreement]" and (b) the VPC Equipment and any related proceeds (the "Axis Collateral").

15.     Axis filed a UCC-1 Financing Statement (the "Axis UCC") against VPC with the Tennessee Secretary of State on October 30, 2015. A copy of the Axis UCC is attached hereto as Exhibit 4.

16.     The Axis UCC describes the collateral as all equipment covered by one or more leases or security agreements entered into by VPC and Axis, and specifically refers to all equipment relating to Agreement #930896 – the Rental Agreement.

17.     Axis and TCF entered into a Purchase and Sale Agreement Without Recourse dated as of March 28, 2016 (the "PSA").  A copy of the PSA is attached hereto as Exhibit 5.

18.     In Section 2.1 of the PSA, Axis sells to TCF all of Axis' right, title and interest in and to certain "Initial Purchased Assets", which are defined as: certain contracts identified on Schedule 1 of the PSA (the "Initial Contracts"); all payment rights arising under the Initial Contracts after the closing date; all equipment leased or financed under the Initial Contracts, including proceeds; all records related to the Initial Contracts; all additional collateral, supporting documents, insurance proceeds and all rights and remedies under the Initial Contracts; and all proceeds of the foregoing.

19.     The Rental Agreement is listed on Schedule 1 to the PSA as an Initial Contract, and a copy is attached as part of Exhibit A to the PSA.

20.     Because the Rental Agreement is an Initial Contract under the PSA, all equipment leased under the Rental Agreement, and all proceeds of such equipment, are within the definition of "Initial Purchased Assets."  See PSA, Section 2.1(c).

21.     Prior to entering into the PSA, Axis did not disclose to TCF the existence of the Addendum to the Rental Agreement, which purports to modify and impair the lessor's rights under the Rental Agreement.

22.     Under Section 2.7 of the PSA, Axis promised to deliver to TCF electronic and original copies of each Purchased Contract, and all supporting documents and records no later than 10 business days after the closing date of the PSA.

23.     Pursuant to Section 2.12 of the PSA, Axis delivered to TCF an Officer's Certificate from Axis' CFO certifying, among other things, that all of Axis' representations and warranties in the PSA are correct and Axis has performed and complied with all covenants of Axis set forth in the PSA.

24.     Among others, Axis made the following representations and warranties to TCF under the PSA:

a.  Section 3.1(e): <u>Accuracy of Information</u>.  All information heretofore furnished by [Axis] to TCF[] for purposes of or in connection with this Agreement, any of the other Transaction Documents or any transaction contemplated hereby or thereby is, and all such information hereafter furnished by [Axis] to TCF[] will be, true and accurate in every material respect on the date such information is stated or certified and does not and will not contain any material misstatement of fact or omit to state a material fact or any fact necessary to make the statements contained therein not misleading.

b.  Section 3.1(g): <u>Good Title; Perfection</u>.  Immediately prior to the sale of the Initial Contracts and the other Initial Purchased Assets to TCF[] pursuant to this Agreement, [Axis] was the legal and beneficial owner of the Initial Purchased Assets in each case free and clears of any Adverse Claim[2].  This Agreement is effective to convey to TCF[] legal and equitable title to each Initial Contract and each other Initial Purchased Asset free and clear of any Adverse Claim; provided, however, that if an Initial Contract is, or is determined to be, an installment sale or loan, [Axis] has a first priority, perfected security interest in the Equipment subject thereto and all financing statements or other similar instruments or documents necessary under the UCC (or any comparable law) to convey such title or to perfect such security interest have been duly filed and are in effect.

c.  Section 3.1(n): <u>Enforceability of Purchased Contracts and Supporting Documents</u>. Each Purchased Contract is effective to create, and has created, a legal, valid and binding obligation of the related Obligor to pay all amounts due or to become due under such Purchased Contract, enforceable against such Obligor in accordance with its terms, and, to [Axis]'s knowledge, subject to no offset, counterclaim or other defense,

---

[2] An Adverse Claim is defined in the PSA as "a lien, security interest, charge, encumbrance or other right or claim in, of or on any Person's assets or properties in favor of any other Person other than the rights of an Obligor created by a Contract."  PSA, Article I.

Case 1:18-cv-00070   Document 1   Filed 09/13/18   Page 5 of 20 PageID #: 130

except that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization or other similar laws relating to or limiting creditors' rights generally. Each Supporting Document has created, a legal, valid and binding obligation of the guarantor or other Person named in such Supporting Document and is enforceable against such Person in accordance with its terms, and, to [Axis's] knowledge, subject to no offset, counterclaim or other defense, except that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization or other similar laws relating to or limiting creditors' rights generally.

d.  Section 3.1(o): <u>Eligible Contracts</u>.  Each Initial Contract was an Eligible Contract on the Closing Date….

e.  Section 3.1(q):  <u>No Sharing</u>.  Any and all fees, commissions, or other amounts owed to any Broker, Vendor or other Person with respect to the Purchased Assets have been paid and no Broker, Vendor or any Person has any residual interest in or contractual right to participate in the proceeds of any Purchased Assets.

f.  Section 3.1(t):  <u>Schedule 1</u>.  All information set forth on <u>Schedule 1</u> is true and accurate and, without limiting the generality of the foregoing, the payments set forth on <u>Schedule 1</u> for each Initial Contract is a true and accurate description of the periodic payments due and owing under the applicable Initial Contract on and after the Initial Cut-Off Date, the due date shown on Schedule 1 with respect to each periodic payment is the actual due date for such payment under the applicable Initial Contract, and the equipment listed on <u>Schedule 1</u> for each Initial Contract is a true and accurate description of the Equipment financed under such Initial Contract.

25.  Exhibit B to the PSA lists the criteria for an Eligible Contract.  Among them are the following:

a.  The contract is valid and enforceable in accordance with its terms, except as limited generally by laws related to bankruptcy, fraudulent conveyances or creditors' rights;

b.  The contract unconditionally obligates the obligor to make periodic contract payments to any assignee of the contract, regardless of any claims the obligor may have against the original lessor or financing source;

c.  The contract is non-cancellable by the obligor and does not contain early termination options except as specifically disclosed on the face of the contract;

d.  The contract's payment are absolute, unconditional obligations of the obligor; and

e.  The contract conforms to the form of contract attached to the PSA without material adverse changes or modifications, and has not been materially amended or modified.

26.     Under Section 3.2(a) of the PSA, if any representation or warranty set forth in Section 3.1 regarding a Purchased Contract was not true and correct and reasonably could be expected to have a material adverse impact on TCF, Axis is required either to cure the breach to TCF's satisfaction or repurchase the Purchased Contract from TCF within 20 business days following written notice from TCF.

27.     Under Section 6.1 of the PSA, Axis agreed to continue to service, administer and collect the Purchased Contracts until TCF designated itself or another party as servicer.

28.     Under Section 8.3 of the PSA, Axis promised to take all actions necessary to vest legal and equitable title to the Purchased Assets irrevocably in TCF, free and clear of any Adverse Claims.

29.     After entering into the PSA, Axis changed its name to Amur Equipment Finance, Inc. From this point forward, Axis will be referred to as Amur.

30.     Amur assigned the Axis UCC to TCF. A copy of the Financing Statement Amendment evidencing the assignment is attached hereto as Exhibit 6.

31.     Amur, acting as servicer for TCF under the PSA, mailed VPC written notice of the PSA ("Amur Notice 1") that directed VPC to make all payments required under the Rental Agreement to TCF. A copy of Amur Notice 1 is attached hereto as Exhibit 7.

32.     Amur Notice 1 does not mention or refer to the Addendum between VPC and KMH that purports to modify VPC's obligations under the Rental Agreement.

33.     Upon information and belief, KMH took possession of the VPC Equipment from VPC on or about April 13, 2017 without TCF's consent or permission and without tendering to TCF all amounts due under the Rental Agreement.

34.     Upon information and belief, after it took possession of the VPC Equipment, KMH began renting the VPC Equipment to other persons without tendering any portion of the rental payments to TCF.

35.     After KMH took possession of the VPC Equipment, VPC stopped making the monthly lease payments owed to TCF under the Rental Agreement.

36.     Amur, acting as servicer for TCF under the PSA, mailed a letter dated June 1, 2017 to VPC and its registered agent, CT Corporation System, that served as formal notice of VPC's default under the Rental Agreement resulting from VPC's failure to make payments, and that Amur would enforce TCF's rights and remedies under the Rental Agreement if payment was not made by June 11, 2017 ("Amur Notice 2"). A copy of Amur Notice 2 is attached hereto as Exhibit 8.

37.     Amur Notice 2 does not mention or refer to the Addendum between VPC and KMH that purports to modify VPC's obligations under the Rental Agreement.

38.     VPC defaulted under the Rental Agreement due to its failure to make monthly payments due to TCF.  The last payment made by VPC under the Rental Agreement was received in April 2017, and all subsequent monthly payments through and including August 2018 are delinquent and past due.  As a result, TCF accelerated VPC's obligations under the Rental Agreement and invoked its right under the Rental Agreement to demand that VPC turn over the VPC Equipment to TCF.

39.     On February 19, 2018, TCF demanded in writing that KMH turn over to TCF the VPC Equipment and all funds received from rental of the VPC Equipment after April 13, 2017.

40.     On February 19, 2018, TCF demanded in writing that VPC immediately turn over to TCF the VPC Equipment and pay TCF all amounts due under the Rental Agreement.

41.     As of September 11, 2018, VPC is obligated to TCF under the Rental Agreement in the amount of $122,211.62, representing the present value of all unpaid payments due under the Rental Agreement, late fees and the residual value of the VPC Equipment.

42.     Following discovery of the defaults under the Rental Agreement, TCF conducted a review of the Rental Agreement, Assignment and related documents, and determined that, contrary to Amur's representations in the PSA, the Assignment did not evidence an assignment and transfer of all of KMH's right, title and interest in and to the Rental Agreement and the VPC Equipment to Amur, but rather evidenced a discounting transaction whereby only the rental payments due from VPC under the Rental Agreement were purchased by and assigned to Amur, with KMH having retained the residual interest in the VPC Equipment following the expiration or termination of the Rental Agreement, subject to a security interest in the VPC Equipment granted by KMH in favor of Amur to secure VPC's obligation to make the assigned rental payments.

43.     TCF wrote to Amur's legal department on May 14, 2018, identified the breaches of the PSA related to the Rental Agreement described above and demanded, pursuant to Section 3.2(b) of the PSA, that Amur either cure the breaches within 20 business days or repurchase the Rental Agreement.  A copy of this letter is attached as Exhibit 9.

44.     Amur did not cure the breaches of the PSA or repurchase the Rental Agreement within 20 business days as required under the PSA.

## COUNT I – BREACH OF CONTRACT - VPC

45.     TCF incorporates by reference and realleges the factual allegations set forth in all preceding paragraphs as if fully set forth herein.

46.     TCF purchased all of Amur's rights in the Rental Agreement and the VPC Equipment.

47.     TCF owns the right to receive all monthly lease payments owed by VPC under the Rental Agreement.

48.     Amur, acting as servicer for TCF, notified VPC of its obligation to pay all monthly lease payments under the Rental Agreement to TCF.

49.     VPC breached its obligations under the Rental Agreement by failing to pay to TCF when due all monthly lease payments under the Rental Agreement.

50.     TCF has accelerated the debts evidenced by the Rental Agreement.

51.     As of September 11, 2018, the total amount owed by VPC to TCF under the Rental Agreement equals $122,211.62, representing the present value of all unpaid payments due under the Rental Agreement, late fees and the residual value of the VPC Equipment.

52.     In addition, under Paragraph 12 of the Rental Agreement, VPC is liable to TCF for all costs of collection concerning its obligations under the Rental Agreement, including reasonable attorneys' fees.

53.     TCF is entitled to a judgment against VPC in the amount of $122,211.62, plus interest that accrued thereafter plus all costs of collection, including attorneys' fees in an amount to be proven.

54.     TCF is entitled to pre-judgment and post-judgment interest in connection with all amounts owed by VPC to TCF.

## COUNT II – BREACH OF CONTRACT - AMUR

55.     TCF incorporates by reference and realleges the factual allegations set forth in all preceding paragraphs as if fully set forth herein.

Case 1:18-cv-00070   Document 1   Filed 09/13/18   Page 10 of 20 PageID #: 135

56.     In Section 2.7 of the PSA, Amur agreed, upon receipt of the purchase price for the Initial Contracts, to deliver an electronic list of the Initial Contracts, and to deliver originals of all Initial Contracts, Supporting Documents and related Records within ten business days.

57.     "Supporting Documents" as defined in the PSA, means "all guaranties and other contracts or arrangements securing or supporting payment of any Purchased Contract or covering the Equipment or Additional Collateral under any Purchased Contract."  "Records" as defined in the PSA, means "with respect to any Purchased Contract, the Contract, the Supporting Documents, all documents, instruments, and financing statements related to and/or delivered to [Amur] in connection with the foregoing, and the payment history relating to such Purchased Contract or the related Obligor."

58.     The Addendum is a "Supporting Document" and "Record" related to the Rental Agreement, which is a Purchased Contract under the PSA.

59.     Amur failed to provide the Addendum to TCF within 10 business days of the closing date of the PSA.

60.     Amur breached Section 2.7 of the PSA.

61.     Pursuant to Section 2.12 of the PSA, Amur furnished to TCF an Officer's Certificate signed by Shauna Heckathorn, who certified that she is the duly elected, qualified and acting CFO of Amur.   In the Officer's Certificate Heckathorn certifies to TCF that the representations and warranties of Amur in the PSA are true, correct and complete as of the closing date, and that Amur has performed and complied with all of its covenants set forth in the PSA.

62.     As described herein, the certifications of Heckathorn described in Paragraph 61 above were not true when made.

63.     Amur breached Section 2.12 of the PSA.

64.     In Section 3.1(e) of the PSA, Amur represented and warranted to TCF that all information furnished by Amur to TCF for purposes of or in connection with the PSA will be true and accurate in every material respect and will not contain a material misstatement of fact or omit to state a material fact necessary to make the statements contained therein not misleading.

65.     Amur represented and warranted to TCF that the Rental Agreement was an "Eligible Contract" as defined in Exhibit B of the PSA meaning, among other things, that: it is valid, enforceable and "noncancellable by the related Obligor, and except as specifically set forth in the Contract, does not contain early termination options and does not permit prepayment either in full or in part;" Amur has done nothing to materially impair the rights of TCF in such contract, the related equipment, supporting documents or scheduled payments or income due under the contract; and the contract and the related equipment may be sold and transferred to TCF without violating the terms of the contract, any supporting document or any other agreement to which Amur is a party or by which Amur is bound.

66.     Prior to entering into the PSA, Amur did not disclose to TCF the Addendum to the Rental Agreement which purports to permit the obligor, VPC, to cancel the Rental Agreement before its stated term and without making all payments required thereunder.

67.     Prior to entering into the PSA, Amur did not disclose to TCF that Amur neither owned, nor held a valid, perfected security interest in, the VPC Equipment.

68.     If the Addendum is not unenforceable because of the Statute of Frauds, it modifies the Rental Agreement in such a way that renders it ineligible to be an "Eligible Contract" under the PSA.

69.     The representations of Amur set forth in Paragraphs 64 and 65 were not true when made.   Amur's omissions to disclose the Addendum and its lack of ownership in the VPC

Equipment to TCF prior to entering into the PSA were materially misleading and caused several of its representations and warranties in the PSA to be untrue.

70.     Amur breached Section 3.1(e) of the PSA.

71.     In Section 3.1(n) of the PSA, Amur represented and warranted to TCF that each Purchased Contract, including the Rental Agreement, "is effective to create, and has created, a legal, valid and binding obligation of the related Obligor to pay all amounts due or to become due under such Purchased Contract, enforceable against such Obligor in accordance with its terms, and, to [Amur]'s knowledge, subject to no offset, counterclaim or other defense…" except laws related to bankruptcy, insolvency or the limitation of creditors' rights generally.

72.     The representations of Amur set forth in Paragraph 71 above were not true when made.

73.     Amur breached Section 3.1(n) of the PSA.

74.     In Section 3.1(o) of the PSA, Amur represented to TCF that the Rental Agreement is an Eligible Contract as that term is defined under the PSA.

75.     Amur did not disclose the existence of the Addendum to TCF prior to entering into the PSA.

76.     To the extent that the Addendum is deemed to be an enforceable modification of the Rental Agreement, the Rental Agreement is not an Eligible Contract under the PSA because: it is not valid and enforceable in accordance with its terms; Valley is not unconditionally obligated to make all 48 payments under the Rental Agreement; the Rental Agreement is not non-cancellable by Valley; all 48 payments are not absolute, unconditional obligations of Valley; and the Rental Agreement has been materially amended and modified.

77. To the extent the Addendum is deemed to be an enforceable modification of the Rental Agreement, the representation of Amur set forth in Paragraph 74 above were not true when made.

78. To the extent the Addendum is deemed to be an enforceable modification of the Rental Agreement, Amur breached Section 3.1(o) of the PSA.

79. In Section 3.1(q) of the PSA, Amur represented and warranted to TCF that no person has any residual interest in or contractual right to participate in the proceeds of any Purchased Assets.

80. The representations of Amur set forth in Paragraph 79 above were not true when made. Amur omitted to disclose to TCF that Amur did not obtain clear title to the VPC Equipment from KMH and KMH claimed a residual interest in the VPC Equipment and the proceeds thereof.

81. Amur breached Section 3.1(q) of the PSA.

82. In Section 3.1(t) of the PSA, Amur represented and warranted to TCF that all information set forth on Schedule 1 of the PSA is true and accurate, and that the payments set forth on Schedule 1 for each Initial Contract is a true and accurate description of the periodic payments due and owing under that contract.

83. The representations of Amur set forth in Paragraph 82 above were not true when made. Amur failed to disclose to TCF the Addendum which, if not unenforceable, may impair the stream of rental payments owed by VPC to TCF.

84. Amur breached Section 3.1(t) of the PSA.

85. In Section 3.2(a) of the PSA, Amur promised that, if any representation or warranty in Section 3.1 was not true and correct when made, and such breach could reasonably be expected to have a material adverse effect on TCF or the collectability of a Purchased Contract, Amur would

either cure the breaches to TCF's satisfaction or repurchase the Purchased Contract at full value within 20 business days of written notice from TCF.

86. TCF provided written notice to Amur on May 14, 2018 that identifies multiple material misrepresentations and breaches of Section 3.1 of the PSA related to the Rental Agreement. TCF demanded that Amur either cure the breaches or repurchase the Rental Agreement as agreed in Section 3.2 of the PSA.

87. Amur failed and refused to cure the breaches or repurchase the Rental Agreement as required under the PSA.

88. Amur breached Section 3.2 of the PSA.

89. In Section 8.3(a) of the PSA, Amur promised to "promptly take all necessary action to vest legal and equitable title to the Purchased Assets irrevocably in TCF, free and clear of any Adverse Claims."

90. Amur has failed to take all necessary action to vest legal and equitable title in the Rental Contract and the VPC Equipment in TCF, free and clear of any adverse claims.

91. Amur breached Section 8.3(a) of the PSA.

92. As a result of Amur's multiple breaches of contract, TCF has incurred damages in the amount of $122,211.62, representing the present value of all unpaid payments due under the Rental Agreement, late fees and the residual value of the VPC Equipment.

93. TCF is entitled to pre-judgment and post-judgment interest in connection with all amounts owing by Amur to TCF.

94. Amur's multiple material misrepresentations and omissions to state facts necessary to make Amur's representations and warranties in the PSA true and correct are the result of gross negligence and/or willful misconduct on the part of Amur.

95. Under Section 7.1(a) of the PSA, Amur is obligated to indemnify TCF from and against all damages, costs and expenses, including reasonable attorneys' fees and disbursements, arising out of Amur's multiple material breaches of the PSA.

96. TCF is entitled to a judgment against Amur in the amount of $122,211.62, plus interest and costs of collection, including attorney's fees.

## COUNT III – CONVERSION - KMH

97. TCF incorporates by reference and realleges the factual allegations set forth in all preceding paragraphs as if fully set forth herein.

98. KMH entered into the Rental Agreement on or around October 21, 2015.

99. On October 29, 2015, KMH assigned to Amur all rights to receive payment under the Rental Agreement.

100. On March 28, 2016, Amur sold to TCF all of Amur's right, title and interest in the Rental Agreement.

101. On or around April 13, 2017, KMH intentionally took possession of the VPC Equipment from VPC, without TCF's consent or permission, for its own benefit and in violation of TCF's rights. KMH then rented the VPC Equipment to other customers and failed to turn over the rental payments to TCF.

102. KMH's unauthorized actions caused VPC to fail to make the monthly payments required under the Rental Agreement, which monthly payments are the property of TCF.

103. KMH intentionally exercised dominion and control over TCF's property.

104. KMH's actions in connection with the Rental Agreement were unauthorized, resulted in multiple breaches of the Rental Agreement and Assignment, and have caused significant losses for TCF. Any rental payments or other proceeds received by KMH with respect

to the VPC Equipment subsequent to its return from VPC constitute the exclusive property of TCF, and have been wrongfully converted by KMH.

105. KMH has wrongfully denied TCF the proceeds from KMH's rental of the VPC Equipment.

106. KMH is liable to TCF for conversion all damages suffered as a proximate result of KMH's wrongful actions including, without limitation, the sum of $122,211.62, representing all amounts owed to TCF under the Rental Agreement, plus all funds received by KMH as a result of KMH's improper re-rental of the VPC Equipment, plus interest.

107. Despite written notice from TCF, KMH has refused to turn over to TCF the VPC Equipment and all proceeds from the sale or rental of the VPC Equipment.

108. KMH's actions in this regard are intentional, fraudulent, knowing and/or reckless.

109. TCF is entitled to an award of punitive damages against KMH in order to punish KMH and deter others from like offenses.

## COUNT IV – UNJUST ENRICHMENT - KMH

110. TCF incorporates by reference and realleges the factual allegations set forth in all preceding paragraphs as if fully set forth herein.

111. KMH is receiving the benefit of the stream of rental payments generated by leasing the VPC Equipment for the term of the Rental Agreement, *i.e.* October 2015 through September 2019 (the "Payment Stream").

112. KMH knows that it assigned all of its rights in the Payment Stream to Amur without disclosing the existence of the Addendum which purports to modify KMH's rights to receive the Payment Stream.

113.     Amur subsequently conveyed to TCF for value all of its rights to the Payment Stream, plus all of its rights in the VPC Equipment including its residual value, without disclosing to TCF the existence of the Addendum.

114.     TCF owns the right to collect the Payment Stream and the residual value of the VPC Equipment.

115.     KMH is receiving a benefit which it knows or should know belongs to TCF.

116.     Under the circumstances, it is inequitable for KMH to accept such benefit without paying the value thereof to TCF.

117.     KMH is liable to TCF for unjust enrichment in the amount of $122,211.62, plus interest.

**WHEREFORE**, premises considered, TCF prays this Court grant it the following relief:

1.     That proper process issue and be served upon Defendants, requiring each of them to appear and answer this Complaint;

2.     That the Court grant TCF a judgment against VPC in the amount of $122,211.62 representing amounts owed under the Rental Agreement through September 11, 2018, plus pre- and post-judgment interest plus all costs of collection, including attorneys' fees in an amount to be proven;

3.     That the Court grant TCF a judgment against KMH in the amount of $122,211.62 representing amounts owed under the Rental Agreement through September 11, 2018, plus pre- and post-judgment interest plus punitive damages in an amount to be determined;

4.     That the Court grant TCF a judgment against Amur in the amount of $122,211.62, plus pre- and post-judgment interest plus all costs of collection, including attorneys' fees in an amount to be proven;

5.    That TCF be awarded both pre-judgment and post-judgment interest in an amount to be determined;

6.    That the Court grant TCF such other and further relief as may be just and proper.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: /s/ Stephen M. Montgomery
    Stephen M. Montgomery, BPR #26489
    Arrin K. Richards, BPR #34412

1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile
smontgomery@nealharwell.com
arichards@nealharwell.com
*Counsel for TCF Equipment Finance, a division of*
*TCF National Bank*